WILLIAMS, J.
The plaintiff, Shelley Cooley, appeals a judgment awarding her $50,000 in general damages against the defendants, Timothy Adgate and the City of Shreveport. The trial court declined to award any amount for future medical expenses, finding that the evidence of such expenses was too speculative. For the following reasons, we amend the judgment to award future medical expenses and affirm as amended.
FACTS
On November 2, 2012, a collision occurred when the vehicle driven by Shelley Cooley was hit from the rear by a vehicle driven by Timothy Adgate, an employee of the City of Shreveport. Following the accident, Cooley sought medical treatment for pain in her neck, back and right knee.
In May 2013, the plaintiff, Shelley Cooley, filed a petition for damages against the defendants, Timothy Adgate and the City of Shreveport. The parties stipulated that the City was liable because Adgate was solely at fault in causing the accident while in the course and scope of his employment as a police officer. As a result, the issue for trial was the quantum of damages.
At trial, the evidence showed that prior to the accident, Cooley had undergone lumbar surgery in 1999 and afterward had suffered from chronic, intermittent back pain. In 2011, Cooley saw Dr. Anthony *755 Stuart regarding gastric bypass surgery, which was performed in June 2011. In treating Cooley, Dr. Stuart did not prescribe any medication for back or knee pain. After the November 2012 accident, Cooley sought treatment for neck, back and right knee pain. In December 2012 and January 2013, she saw Dr. Kamm with a complaint of low back pain radiating to her hip. Dr. Kamm prescribed anti-inflammatory and pain medication. In February 2013, Cooley was seen by Dr. Acurio at Orthopedic Specialists of Louisiana for back pain radiating to her left leg. In May 2013, Cooley received a steroid injection at Schumpert First Care. In June 2013, she underwent a lumbar MRI showing disk bulges and herniation at several levels. In that same month, Cooley saw Dr. Clinton McAlister with back pain radiating to her right leg. Dr. McAlister ordered a bilateral L5 selective nerve root block. During 2013 and 2014, Cooley continued to seek treatment for back pain radiating to both legs and she received additional nerve root blocks.
In July 2015, Cooley saw Dr. Kerr at the Spine Institute of Louisiana with a complaint of chronic low back pain radiating to her legs. Dr. Kerr ordered another lumbar MRI, which showed a disk herniation at L5-S1 contacting the nerve root. Dr. Kerr determined that Cooley's continued back pain was caused by the ruptured disk at L5-S1 and nerve root compression. In September 2015, Dr. Kerr ordered bilateral facet joint injections. In May 2016, Cooley saw Dr. John Noles, a specialist in pain management. Dr. Noles diagnosed Cooley with lumbar spondylosis (degeneration of the spine) and lumbar facet arthropathy. Dr. Noles performed a nerve rhizotomy, which involves burning the sensory nerve to the facet joints in an effort to relieve pain. The evidence showed that since the accident in November 2012, Cooley has had 5 nerve root blocks, 2 lumbar MRIs, 2 bilateral facet joint injections and 4 rhizotomy procedures.
Cooley was the only witness who testified at trial. The medical testimony was presented through the depositions of Dr. Clinton McAlister, Dr. Eubulus Kerr, Dr. John Noles, Dr. Anthony Stuart and Dr. Bharat Guthikonda. After taking the matter under advisement, the trial court issued oral reasons for judgment finding that the accident had exacerbated Cooley's pre-existing back problems and required medical treatment for her back pain. However, the court found that the evidence regarding the need for future medical care due to the accident was speculative and declined to award any amount for future medical expenses. The trial court rendered judgment awarding Cooley $79,508.66 for past medical expenses and $50,000 in general damages. Cooley appeals the judgment.
General Damages
Cooley contends the trial court erred in awarding $50,000 in general damages. Cooley argues that the award should be increased because the evidence shows that the accident caused the injuries for which she has required medical treatment over a period of at least 4 years.
One damaged through the fault of another is entitled to full indemnification for the damages caused thereby. La. C.C. art. 2315 ; Wainwright v. Fontenot , 2000-0492 (La. 10/17/00), 774 So.2d 70. General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of lifestyle which cannot be definitely measured in monetary terms. Bellard v. American Cent. Ins. Co. , 2007-1335 (La. 4/18/08), 980 So.2d 654. The trier of fact has much discretion in the *756 assessment of general damages. La. C.C. art. 2324.1. The role of the appellate court in reviewing general damage awards is not to decide what is an appropriate award, but to review the exercise of discretion by the trial court. Wainwright, supra .
In the present case, Shelley Cooley testified that in the 2012 accident, the impact "jerked" her backward and her right knee hit the gearshift. Cooley stated that the airbags did not deploy and that her 6-year-old grandson who was in the car at the time did not sustain an injury that required treatment. Cooley acknowledged that she had experienced problems with her back before the 2012 accident. She stated that she had back surgery for a bulging disc in 1999. Cooley testified that she was involved in two prior auto accidents in 2007 and 2009; after the 2007 accident she saw a chiropractor for back pain. Cooley stated that in 2011, she had gastric bypass surgery which was recommended because of her obesity and history of pain in the back and knees. Cooley testified that after her 1999 back surgery and before the 2012 accident, she felt back pain from time to time and on those occasions took prescription medication to relieve the pain. She stated that her back pain was worse after the 2012 accident than before the collision.
Cooley testified that she began seeing Dr. Richard Kamm one month after the 2012 accident and when her back pain persisted she visited Dr. Acurio, who ordered an MRI. She then saw Dr. McAlister, who reviewed the MRI results and ordered nerve root injections for her back pain. Cooley testified that she also saw Dr. Eubulus Kerr, who ordered lumbar facet injections that provided temporary pain relief. Cooley stated that she was then referred to Dr. John Noles, who has performed radio frequency ablations on each side of her lumbar spine. Cooley testified that these procedures relieve her pain for a number of months, but she was still feeling intermittent back pain at the time of trial.
The trial court heard the testimony, reviewed the depositions of the physicians and considered the notes of Dr. Kamm. The court pointed out that Dr. Kamm's records show that from December 2012 to April 2013 Cooley's lumbar range of motion (ROM) steadily improved until June 2013, when her lumbar ROM was normal with a negative straight leg test. The record also shows that in June 2013, an EMG of Cooley was negative for radiculopathy and did not show evidence of nerve damage. The trial court noted that prior to the 2012 accident, Cooley's history shows a period of approximately 18 years of chronic, intermittent back pain. The trial court found that the 2012 collision exacerbated Cooley's pre-existing back problems and caused her "some" pain and suffering.
Based on the evidence presented, we cannot say the trial court's award of $50,000 in general damages was an abuse of the wide discretion afforded the trier of fact in the assessment of such damages. Thus, this assignment of error lacks merit.
Future Medical Expenses
Cooley contends the trial court erred in failing to award any amount for future medical expenses. She argues that the expert testimony and medical evidence presented supports an award of future medical costs.
To recover the cost of future medical expenses, a tort victim must establish the probability of such expenses with supporting medical testimony and estimations of their probable cost. Menard v. Lafayette Ins. Co. , 2009-1869 (La. 3/16/10), 31 So.3d 996. The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a *757 preponderance of the evidence that those expenses will be medically necessary. Menard, supra ; Terry v. Simmons , 51,200 (La. App. 2 Cir. 2/15/17), 215 So.3d 410. An award for future medical expenses is by nature highly speculative and not susceptible to calculation with mathematical certainty. When the record establishes that future medical expenses will be necessary, the court should not reject such an award on the basis that the record does not provide the exact value of the necessary expenses if the court can determine from the evidence in the record a minimum amount that reasonable minds could not disagree will be required. Menard, supra .
A defendant takes his victim as he finds her and is responsible for all natural and probable consequences of his tortious conduct. Wainwright, supra . In reviewing a factual finding regarding special damages, the issue is whether the trial court's conclusion was reasonable in light of the record as a whole. Menard, supra ; Rosell v. ESCO , 549 So.2d 840 (La. 1989).
In this case, Dr. Eubulus Kerr, a board-certified orthopedic surgeon, testified that he first saw Cooley in July 2015, when she was referred by Dr. McAlister for continued low back pain. Dr. Kerr stated that he ordered an MRI, which was done in August 2015. Dr. Kerr explained that the MRI showed degenerative changes with a disc bulge at L4-5 and a disc herniation at L5-S1 contacting the nerve root. Dr. Kerr stated that in November 2015 he ordered bilateral facet joint injections that provided Cooley with very good pain relief for approximately 2 weeks. Dr. Kerr testified that he recommended a rhizotomy procedure to provide Cooley with 9-12 months of back pain relief. Dr. Kerr stated that he referred Cooley to Dr. Noles for pain management and would defer to Dr. Noles regarding her need for future medical treatment.
Dr. Kerr testified that Cooley gave a history of previously having back surgery after which her pain symptoms improved. Dr. Kerr stated that the medical records showed that prior to the 2012 accident, Cooley was having chronic back pain with occasional flare ups, but after the accident she experienced more severe back pain. Dr. Kerr testified that obesity does not help a person's back pain, but that he had not seen a study finding that morbid obesity is a cause of back pain. Based on his treatment of Cooley and the medical records, Dr. Kerr opined that her current condition and her required future medical treatment are more probably than not related to the 2012 accident.
Dr. John Noles, who is board certified in anesthesiology and pain management, testified that he first saw Cooley in May 2016 and she gave a history of her treatment from the time of the 2012 accident; she also mentioned her prior gastric bypass and back surgery. Dr. Noles explained that Cooley had been referred by Dr. Kerr after another physician had terminated a lumbar radio frequency procedure because Cooley had not tolerated the pain. Dr. Noles testified that he diagnosed Cooley with lumbar disc degeneration and lumbar facet arthropathy, which is pain of the spinal facet joints. Dr. Noles stated that in May 2016, he performed the radio frequency ablation, or rhizotomy, which provides pain relief for approximately 6-12 months. Dr. Noles opined that more probably than not Cooley will need to have the radio frequency ablation each year for the remainder of her life. Dr. Noles testified that she will need to continue pain medication requiring future office visits and occasional drug testing. Dr. Noles could not say that the 2012 accident was the cause of Cooley's need for future medical treatment.
*758 Zoe Meeks, a certified public accountant, testified by deposition and was accepted by the trial court as an expert in the calculation of economic damages. Meeks stated that in preparing her report, she was provided with Cooley's date of birth, excerpts from Dr. Noles' deposition regarding the medical procedure and a letter from the physician's office stating the cost of the rhizotomy. Meeks testified that she estimated Cooley's life expectancy by using the U.S. Department of Vital Statistics' Life Tables, calculated the projected increase in medical costs with the U.S. Department of Labor's Consumer Price Index and applied a discount rate for the future time period using the yields from U.S. Treasury securities. Meeks stated that she estimated Cooley's life expectancy at 35 years by considering the factors that she was a 43-year-old Caucasian woman. Meeks explained that she did not reduce the life expectancy figure based on specific factors such as Cooley's obesity, smoking or hypertension because the Life Tables are based on averages that take into account various health conditions and behaviors like smoking. Based upon the annual cost of $5,960 for the lumbar radio frequency ablation and $1,734 for office visits, Meeks calculated the present value of Cooley's future medical expenses as $269,129.
Dr. Bharat Guthikonda, a neurosurgeon, testified that he examined Cooley for a second medical opinion requested by the defendants. Dr. Guthikonda stated that whether Cooley had experienced back pain after her 1999 surgery and before the 2012 accident was relevant to the issue of causation. He acknowledged that although his office note states that he saw Cooley "with the resident," there was no resident actually present. Dr. Guthikonda testified that the lumbar facet arthropathy, or facet hypertrophy, shown on the MRI is a degenerative condition that developed before the 2012 accident. He stated that it is "possible" that Cooley's pain in 2017 is a carryover from her pre-accident back pain, but the evidence indicates that her back pain became more symptomatic after the 2012 accident. Dr. Guthikonda testified that he would defer to Dr. Noles as to the future medical treatment Cooley will need for her pain.
In its reasons for judgment, the trial court asserts that the evidence showing that the 2012 accident is a cause of Cooley's need for future medical treatment is too speculative. However, Cooley presented the testimony of Dr. Kerr, who opined that Cooley's need for future medical care is more probably than not related to the 2012 accident. In addition, the defendants' expert, Dr. Guthikonda, stated in his report that the impact to Cooley in the 2012 accident "likely" caused neural irritation resulting in her current symptoms. Thus, contrary to the trial court's assertion, the preponderance of the evidence presented demonstrates that the 2012 accident is causally related to Cooley's need for future medical treatment.
Regarding the duration of future medical care, the trial court found that Meeks' calculation of future expenses based on a life expectancy of 35 years was not credible because Meeks had not reduced that estimate to account for particular factors, such as Cooley's obesity, smoking, or hypertension, which could reduce one's life span. However, the defendants did not introduce expert testimony to contradict the reasonableness of the period of life expectancy projected by Meeks. Rather, the trial court refused to award any amount for future medical expenses based on the court's speculation regarding Cooley's potential life span.
The medical testimony indicates that Cooley's treating physicians and Dr. Guthikonda would defer to Dr. Noles' opinion *759 regarding the treatment she will need in the future. Dr. Noles opined that more probably than not Cooley will need annual radio frequency ablation procedures for the rest of her life. Dr. Kerr opined that such future treatment is related to the 2012 accident. The trial court abused its discretion in ignoring this unrefuted testimony demonstrating that Cooley will need future medical treatment to fully resolve the back pain symptoms related to the 2012 accident. Based on the evidence contained in the record, Cooley established the probability that future medical expenses will be necessary with supporting medical testimony and an estimation of the probable cost of those expenses.
After reviewing this record, we conclude that the evidence presented establishes that Cooley's need for medical treatment in the future is causally related to the 2012 accident. Thus, the trial court erred in failing to award future medical expenses reasonably supported by the record. Based upon the costs of the radio frequency procedures and office visits provided by Dr. Noles' office and the value of such treatment over the period of Cooley's life expectancy as calculated by Meeks, we shall amend the judgment to award the amount of $269,129 in future medical expenses.
CONCLUSION
For the foregoing reasons, the trial court's judgment is hereby amended to award to plaintiff, Shelley Cooley, the additional amount of $269,129 in future medical expenses. The judgment is otherwise affirmed. Costs of this appeal in the amount of $325 are assessed to the appellees, Timothy Adgate and the City of Shreveport.
AMENDED AND AFFIRMED AS AMENDED.